NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MANUEL GAFANHA,

        Plaintiff,

        v.

JOHN HOCHBERG, MD

        Defendant.

Civil Action No. 09-444 (KSH)

**OPINION**

**Katharine S. Hayden, U.S.D.J**.

    Plaintiff Manuel Gafanha ("Gafanha"), a former inmate of Northern State Prison ("Northern State"), brought this civil action against defendant John Hochberg asserting violation of his Eighth Amendment rights under 42 U.S.C. § 1983 and of state law. Gafanha alleges that Hochberg, the former medical director of Northern State, denied him medical treatment for an ear problem, resulting in deafness in his right ear. Hochberg now moves for summary judgment (DE 77) on Gafanha's § 1983 claim.[1] Gafanha did not oppose this motion.

---

[1] In a December 2010 order (D.E. 84), the Court denied defendant Hochberg's motion for partial summary judgment as to Gafanha's state law medical malpractice and negligence claims. The Court ruled that it was premature to opine on Gafanha's state law claims while the defendant's motion for summary judgment on Gafanha's § 1983 claim, which is the basis for the Court's jurisdiction in this matter, remained pending.

**BACKGROUND:**[2]

Gafanha, whose confinement in state custody began in May 2004, claims that he suffered a permanent hearing loss in his right ear in 2006 and 2007 while incarcerated at Northern State. He first complained of a problem with his right ear to a doctor at Northern State in September 2006. (Def. Hochberg's Statement of Material Facts ("Hochberg SOMF"), D.E. 77-1 at 5 ¶ 14.) Gafanha's prison medical records show that, between September 2006 and August 2008, he was treated for ear-related problems by various doctors and nurses during at least 11 sick call visits. (Hochberg SOMF ¶¶ 14-71; Def.'s Moving Br., D.E. 77 at 30-31.) During the same period, Gafanha also visited several specialists based on referrals, and was prescribed at least 10 different medications. (Moving Br. at 30-31.)

Hochberg's name first appears in Gafanha's medical records on March 9, 2007, in a notation indicating that he had received results of a stress test performed the previous month and that the results were "normal." (Hochberg SOMF ¶ 31.) Before this date, there is no indication in the records that Hochberg had been treating Gafanha. (Id.) Hochberg's name next appears on March 15, 2007 in a medical chart note that "'inmate needs eval by me.'" (Id. ¶ 32.) According to the records, Hochberg treated Gafanha four days later, on March 19, when he noted that Gafanha complained of "'tinnitus'" and had been "'seen by ENT, no pe done according to inmate, audiology exam pending.'" (Id. ¶ 33.) Hochberg's notation thus indicates that at the point he began treating Gafanha, he already had seen an ENT specialist and been scheduled for a

---

[2] The following narrative is based on the record, including the amended complaint and the moving brief and its supporting documents. Plaintiff did not oppose defendant's present motion or file a counter-statement of material facts. Under Local Rule 56.1(a), a party opposing summary judgment "shall furnish, with its opposition papers, a responsive statement of material facts. . .stating each material fact in dispute. . . and any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." L. Civ. R. 56.1(a). Accordingly, the defendant's material facts are deemed undisputed for the purposes of this motion, and are admitted. *See* Hill v. Algor, 85 F. Supp. 2d 391, 408 n.26 (D.N.J. 2000).

follow-up audiology examination. (Id. ¶ 69.) Hochberg prescribed an antihistamine and pain medication, and recommended that Gafanha "'return for follow-up'" as needed. (Id.)

The prison medical records do not indicate that Hochberg ever personally examined Gafanha again. In his deposition, Gafanha asserted that he was treated by Hochberg on other occasions, but he adduced no evidence to counter his prison medical records indicating that Hochberg "actually saw and provided medical treatment to the Plaintiff on a single occasion: March 19, 2007." (Hochberg SMOF ¶ 64.) Gafanha also stated that he did not know when Hochberg first examined him, but estimated that the examination took place in April or May of 2007 in the doctor's office, where Hochberg:

> did the medical thing. He did [look] in my ear and did the whole checkup thing. He says to me you have a problem with your ear. Your ear—the canal is this kind of thing and continue with the antibiotics. . .the problem was not when he examined that first time. . . I didn't have a problem with Mr. Hochberg, his diagnosis or anything then. (Tr. of Dep. of Manuel Gafanha, March 26, 2010 ("Gafanha Tr."), D.E.77-6, ex. C at 50:24-51:6, 53:17-20)

Other medical records submitted by Hochberg show that he: (1) received referral requests for Gafanha for follow-up audiology consults on November 14 and December 13 of 2007, and both times Hochberg approved the requests the following day (Hochberg SOMF ¶¶ 44-49); (2) reviewed "test and consult reports" relating to Gafanha in 2007 and 2008, including three times when Hochberg "received, reviewed and then noted in the chart results of various testing," and three times when he "received, reviewed and noted on the chart, reports from [another doctor] regarding audiological consultations" (Id. ¶¶ 51, 55, 61, 65, 66 and 67), and; (3) provided Gafanha "with a medical certification" in December 2008 for community residential release. (Id. ¶ 68.)

Gafanha's complaint states that, while at Northern State, he was diagnosed for "wax in my ear, and treated as such" and "later was treated for a[n] ear infection with antibiotics." (Amend. comp., D.E. 5 at 2-3.)  Gafanha claims that "**defendants**. . .told me that this was serious [and] required treatment, and that if they did not treat, I could lose my hearing," but "delayed [and] failed to treat me properly deliberately in an effort to save resources," resulting in permanent hearing loss in his right ear.  (Id. at ¶ 11-17) (emphasis added.)[3]  Regarding Hochberg's alleged conduct as related to Gafanha's Eighth Amendment claims, Gafanha specifies only that Hochberg "failed to treat me after numerous requests for pain in my ear." (Amend. compl. at 2.)

By order of the Court (D.E. 78), Gafanha filed a written narrative statement of facts (D.E. 78), which include seven attached medical records.  (Def.'s Narrative Statement of Facts, D.E. 78.)  However, not one of these records reference Hochberg, and all but one pre-date Gafanha's documented examination by Hochberg on March 19, 2007.  The single record dated after that examination, a "Referal Form" from April 3, 2007, states that Gafanha "was seen by ENT who recommends audiological consultation," diagnosed with "mild to moderate" hearing loss, and had an "impression of the right ear" made to prepare a hearing aid. (Id. at 12)  The April 3 referral form lists the "ordering provider" as Dr. Herbert Smyczek, and the diagnosis is signed by "JD Fishman," who is identified by the parties as another doctor. (Id. at 12; Mov. Br. ¶ 36.)

---

[3] Gafanha filed a civil complaint in Superior Court in November 2008 accusing Hochberg and unnamed defendants of violation of state law and of plaintiff's constitutional rights under 42 U.S.C. § 1983.  Hochberg removed the case to this Court in January 2009.  The Court subsequently reviewed Gafanha's complaint for dismissal as required by 28 U.S.C. § 1915A, and, in a February 2009 order (D.E. 3), the Court gave Gafanha 30 days to amend his complaint to assert a claim under 42 U.S.C. § 1983 that one or more defendants was deliberately indifferent to his serious medical needs.  Gafanha filed his amended complaint (D.E. 5) in March 2009, at which point Hochberg, the only named defendant, moved for dismissal (D.E. 8).  In a November 2009 opinion (D.E. 15), the Court noted that Gafanha's amended complaint "refers throughout to 'defendants,' while naming only Hochberg," and instructed that "[t]o the extent that plaintiff intends to assert claims against other defendants, he must amend the complaint no later than 45 days after this Opinion & Order is entered."  Plaintiff never filed an amended pleading naming any additional defendants.  Hochberg is the sole defendant in this action.

In his deposition, Gafanha, when asked if he had any evidence that "Dr. Hochberg believed that it was likely his treatment was going to cause you harm," replied: "I don't know." (Gafanha Tr. at 106:5-10.) The questioning continued:

> Do you have any reason to believe that at the time you were prescribed antibiotics for an ear infection, that you did not, in fact, have an ear infection; do you have any evidence that you did not have an ear infection on those occasions?
>
> Gafanha: I don't know. I'm not a doctor. I don't know.
>
> Q: But you don't have to be a doctor in order to have evidence. I'm asking you in terms of this lawsuit whether you have any evidence that shows on those occasions you did not have an ear infection?
>
> A: I wouldn't know. I don't know. I don't know what kind of evidence. (Tr. at 106:10-107:15.)
>
> …
>
> Q: Do you have any evidence that the antibiotics that were prescribed to you on those occasions were inappropriate for the infection that you had?
>
> A: They probably weren't effective, because I lost my hearing. . . Again, I don't know, because I'm not a doctor. (Tr. 107:21-108:12.)

**LEGAL STANDARD:**

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party asserting that a fact is genuinely disputed must support that assertion by citing to materials in the record, including depositions, documents affidavits or other materials. Fed. R. Civ. P. 56(c)(1)(a). If a party "fails to properly support an assertion of fact or fails to properly

5

address another party's assertion of fact," the court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." F. R. Civ. P. 56(e)(3). When a court analyzes a motion for summary judgment, the "inferences to be drawn from the underlying facts. . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)).

**DISCUSSION**:

### 1.  Section 1983 Actions

Section 1983 does not provide substantive rights, but rather provides a means by which a plaintiff can seek relief for violations of rights created by federal law. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). A cause of action under § 1983 is a claim for damages against a state official for alleged violations of constitutional rights. The language of 42 U.S.C. § 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. .

To establish a § 1983 violation, a plaintiff must demonstrate that: (1) the challenged conduct was committed by a person acting under state law, and (2) the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.

In his moving brief, Hochberg does not dispute that he was a state actor for purposes of § 1983, so the issue here is whether there is a genuine dispute as to any material facts regarding Hochberg's alleged violation Gafanha's constitutional rights.

6

**2. Gafanha's Eighth Amendment Claim:**

The Eighth Amendment prohibits imposing "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." *Rouse v. Plantier*, 182 F.3d 192, 197 (3rd Cir. 1999) (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)). In the context of medical attention for a prisoner, a claim that there was an "inadvertent failure to provide adequate medical care cannot be said to constitute 'an unncecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind,'" and a complaint "that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).

In order to establish that the medical care provided by Hochberg violated the Eighth Amendment, Gafanha must show that Hochberg (1) was deliberately indifferent to his medical needs, and that (2) his medical needs were serious. *Id.* (citing *Estelle* at 106). The Supreme Court has held that a prison official cannot be held liable under the Eighth Amendment unless "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan, 511 U.S. 825*, 837 (1994). The official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

The Third Circuit has found deliberate indifference where a "prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse* at 197. Mere negligence or medical malpractice claims "without some more culpable state of mind, do not constitute

7

deliberate indifference." *Rouse* at 197.  Further, the Third Circuit has made clear that it affords "considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients" and will not "attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment." *Inmates of Alleghany County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979).

Here, the record is replete with undisputed evidence that Gafanha received regular medical treatment for his right ear beginning in September of 2006.  This included treatment on at least eleven different occasions by a variety of doctors and nurses.  Gafanha also saw specialists outside Northern State, and regularly was prescribed medication for his ear.

Gafanha's complaint asserts that Hochberg denied him treatment, yet the undisputed record shows that Hochberg noted that Gafanha "needs eval by me" on March 15, 2007 and then, four days later, he examined Gafanha, observing that Gafanha complained of "tinnitus" and had been seen by an ENT and had an audiology exam pending.  Hochberg then prescribed medication.  Gafanha has not come forward with any evidence to suggest deliberate indifference on Hochberg's part with regard to that examination—the only time that records show he ever personally treated Gafanha.  Significantly, he acknowledged in his deposition that, "I didn't have a problem with Mr. Hochberg, his diagnosis or anything."

Gafanha also has asserted that Hochberg refused to approve consults or referrals for him to other doctors (Gafanha Tr. 64:8-14), but the undisputed record shows that Hochberg approved referral requests for Gafanha on the two occasions he was presented with them, and Gafanha conceded in his deposition that he did not have any paperwork or records indicating that Hochberg ever denied a referral request concerning his ear. (Gafanha Tr. 87:6-16.)

Nor can Gafanha point to any document, affidavit or other material in the record supporting his assertion that any unspecified "defendants"—let along Hochberg—did not approve referrals in order to save resources.  Likewise, he has produced no evidence—apart from his own deposition testimony—to back up his contention that another doctor allegedly told him, "if this would have been taken care of at an earlier time. . . there would have been certain medications, certain things that could have prevented you from losing your hearing." (Gafanha Tr. 63:1-11, 72:13-23.)  Gafanha's allegations that unspecified "defendants. . . failed to supervise their staff" and adopted a policy that created "unreasonable risk" are similarly unsupported.  As Hochberg argues, Gafanha has made any factual allegations demonstrating "what the alleged policy and procedure might consist of, how it relates to his alleged injuries, or how any of it relates to the dole named defendant, Dr. Hochberg."  (Hochberg SOMF ¶ 11.)

The Court is left to consider the unchallenged medical records produced by Hochberg showing that Hochberg approved all referrals requests for Gafanha that were presented to him, and that he treated Gafanha in person only once in an examination that Gafanha himself does not fault.  Hochberg argues that Gafanha's "ear complaints and conditions were extensively treated, and at no time was he denied medical treatment." (Moving Br. at 29.)  Based on the record before it, the Court agrees.

Gafanha has conceded that he does not have any evidence to suggest that Hochberg's treatment of him would cause him harm.  He cannot maintain his Eighth Amendment claim simply based on an assertion that he did not get well, or that he disagreed with Hochberg's diagnosis.  *See Inmates of Alleghany County*, 612 F.2d at 762.  The Court finds that Gafanha has failed to show a disputed issue of material fact as to Hochberg's alleged deliberate indifference, which entitles Hochberg to summary judgment as to Gafanha's § 1983 claim against him.

**CONCLUSION:**

For the foregoing, the Court grants defendant Hochberg's motion for summary judgment (D.E. 77) as to plaintiff's § 1983 claims against him. Having disposed of the lone federal claim in the case, the Court declines to exercise jurisdiction pursuant to 28 U.S.C. § 1367 over plaintiff's remaining state law claims, and dismisses all counts of the amended complaint (D.E. 5).

|  |  |
|---|---|
| March 31, 2011 | /s/ Katharine S. Hayden<br>Katharine S. Hayden, U.S.D.J. |